UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Angela Schamens and Amr Fouda,

　　　　　Petitioners,

v.

Jefferson Sessions, et al.

　　　　　Respondents.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 17-4926 (MJD/HB)

---

David L. Wilson and Michael D. Gavigan, Wilson Law Group, Counsel for Petitioners.

Anna Juarez, Trial Attorney, United States Department of Justice, Civil Division, Office of Immigration Litigation, Counsel for Respondents.

---

This matter is before the Court on Respondents' motion to dismiss.

## I.    Background

Petitioner Amr Fouda married Arianne Whitt in February 2003. (Petition, Ex. 2 at 5.)  Whitt is a citizen of the United States and Fouda is a citizen of Egypt. On March 9, 2004, Whitt filed an I-130 Petition for Alien Relative, an immigrant visa, on Fouda's behalf.  (Id.)  To support the I-130 petition, Fouda and Whitt submitted documents, and sat for an interview with the U.S. Citizenship and

1

Immigration Services ("USCIS") on February 16, 2006.  (Id.)  According to the record, Whitt and Fouda claimed that they resided together at 25-22 Stainway St. # 10-D, Long Island City, NY 11103.  (Id.)  The documents submitted to support the Petition included Whitt's interim New York identification; Fouda's 2004 taxes; 2005 taxes, filed jointly; Whitt's and Fouda's 2005 W-2s; and an AIG insurance statement dated September 22, 2003 in Fouda's name only.  (Id. at 5- 6.)

The USCIS characterized their interview responses as vague and discrepant regarding family, religion, relationship history and work schedules. (Id. at 6.)  Their responses regarding everyday life was characterized as weak. (Id.)  The USCIS also determined the documents submitted in support of the petition were of little value.  For example, Whitt obtained her New York identification five days before her marriage to Fouda and did not use the marital address.  (Id.)  Fouda's 2004 taxes showed that he claimed single and filed individual taxes, even though he was married in February 2003.  (Id.)  The joint 2005 taxes were prepared the day before the interview, and were not signed. (Id.)  Whitt's 2005 W-2's listed three different addresses, none of which reflected the alleged marital address at that time, which was in North Randall, Ohio.  (Id.)

Further, the insurance documents dated September 22, 2003 listed Fouda as the

sole insured, and Whitt as an excluded driver.  (Id.)

On July 20, 2006, the USCIS issued a Notice of Intent to Deny ("NOID") the

I-130 petition based on the determination that Fouda and Whitt married for the

purpose of evading immigration laws.  (Id. at 6.)  The USCIS did not receive a

response to the NOID and the I-130 petition was denied.  (Id.)

The Department of Homeland Security ("DHS") thereafter placed Fouda in

removal proceedings, as Fouda had remained in the United States longer than

the time authorized.  (Id.)  The Immigration Judge granted Fouda's request for

voluntary departure in October 2007, and Fouda departed the United States in

January 2008.  He currently resides in Egypt.  (Id.)

Prior to Fouda leaving the country, Whitt and Fouda had signed a marital

separation agreement on August 17, 2007, and the marriage was dissolved in

October 2007.  (Id. at 7.)  The separation agreement provided they owned no joint

assets such as property, bank accounts, or credit card accounts.  (Id.)

On August 29, 2007, Whitt and Fouda filed an appeal with the Board of

Immigration Appeals ("BIA"), appealing the USCIS's denial of the I-130 petition,

claiming that the NOID was sent to the wrong address.  (Id.)  In support of the

appeal, they filed several additional documents: duplicate copies of the 2005

taxes, telephone statements, and insurance documents that listed Fouda's name

only; an American Express bill in the name of Fouda; Verizon telephone

statement in Whitt's name only, listing the address as 287 Lloyd, Akron, OH;

Whitt's Affidavit in which she attempted to explain her relationship with Fouda

and to discount the allegations of fraud; Fouda's Affidavit in which he also

attempted to discount the allegations of fraud; an affidavit from Whitt's father

and several affidavits from friends.  (Id. at 6-7.)  On January 25, 2008, the BIA

remanded the case per the request of DHS for further consideration.  The

decision of the District Director was thereafter vacated.  (Id. at 7.)

Petitioners Schamens and Fouda were then married in Egypt on

September 29, 2008.  (Id.)  On December 1, 2008, Schamens filed a new I-130

petition on behalf of Fouda.

The next day, the USCIS issued its decision to deny Whitt's I-130 petition

due to the fact that the marriage between her and Fouda had been dissolved.

(Id.)  On December 24, 2008, Fouda's attorney, Cassondre K. Buteyn, filed a

notice of appeal to the BIA from a decision of a USCIS Officer, but that appeal

was dismissed because it lacked the requisite signatures and forms.  (Id.)

4

With regard to the I-130 petition filed by Schamens, Petitioners sat for an interview with a USCIS officer in June 2009. This I-130 petition was thereafter approved on January 28, 2010. (Pet., Ex. 1.) Petitioners claim that the officer conducting the interview, Trina M. Swanson, informed them she was aware of a prior alien relative petition for Fouda filed by Whitt, and confirmed that the denial of that petition was based on the dissolution of the prior marriage and not on a finding the prior marriage was fraudulent. (Pet. ¶¶ 23, 24.) Petitioners then pursued processing Fouda's application with the Department of State, filing a waiver of inadmissibility. (Id. ¶ 27.) That application remained pending for five years. (Id. ¶ 28.)

On April 16, 2013, Schamens was sent a notice of intent to revoke ("NOIR"). (Hove Aff., Ex. 1.) That notice was returned to the U.S. Post Office as undeliverable. (Id.) A second notice was sent on August 20, 2013. (Id.)

As set forth in the NOIR, a review of Fouda's file revealed that Officer Swanson may not have been aware of Fouda and Whitt's suspected marriage fraud when approving the petition. (Id. at 6.) Accordingly, in October 2012, the USCIS conducted a further investigation and issued subpoenas to Whitt's places of employment. (Id.) In response, the USCIS received additional evidence which

reflected that Whitt did not live at the alleged marital residence during the time she was married to Fouda, and that she claimed to be single on employment forms from 2004 and 2005, even though she was married from 2003-2007.  (Id.)  A subpoena was also issued to the owner of the alleged marital residence in North Randall, Ohio, through which the USCIS learned there were no records of Whitt or Fouda ever living at that address.  (Id. at 6-7.)

In the NOIR, the USCIS advised Schamens of its determination that Fouda had previously entered into a marriage for the purpose of evading immigration laws and was therefore ineligible for a visa petition pursuant to 8 U.S.C. § 1154(c).  (Id. at 7.)  The NOIR also informed her that she had thirty days from the date of the letter to offer written evidence in rebuttal.  (Id.)

Schamens responded to the NOIR on September 18, 2013 through her attorney, and submitted additional documents, such as an affidavit from Fouda, an email from Fouda's former immigration attorney explaining that she did not receive a copy of the 2006 NOID, an article from About.com explaining Islamic dating customs, a blank 2013 IRS Form W-4, and arrest information for Whitt dated 2012.  (Pet., Ex. 2 at 8-9.)

On July 1, 2015, the USCIS issued its decision to revoke the I-130 petition. (<u>Id</u>.)  This decision was appealed to the BIA, and on February 28, 2017, the BIA affirmed the decision to revoke. (Pet., Ex. 3.)

In this action, Petitioners claim that Respondents' practices, policies, conduct and failures to act deprived them of their right to have an immigrant visa petition approved pursuant to 8 U.S.C. §1151.  Petitioners also claim that Respondents violated the Administrative Procedures Act ("APA") when it revoked Schamens' I-130 petition, because such decision was erroneous and contrary to law.  Petitioners also assert a claim that their rights to due process under the Fifth Amendment have been violated.

Respondents now move the Court to dismiss for lack of subject matter jurisdiction, arguing there is no judicial review of claims arising from the USCIS's discretionary decision to revoke Petitioners' I-130 petition.  Respondents argue in the alternative that Petitioners have failed to state a claim upon which relief may be granted.

**II.     Subject Matter Jurisdiction**

  **A. Standard**

Courts lack jurisdiction to review any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is . . . in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252 (a)(2)(B)(ii). Pursuant to 8 U.S.C. § 1155, "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title. Such revocation shall be effective as of the date of approval of any such petition." Decisions made under § 1155 are discretionary and as such, are not subject to judicial review. Abdelwahab v. Frazier, 578 F.3d 817, 821 (8th Cir. 2009); see also Bernardo ex rel. M & K Eng'g v. Johnson, 814 F.3d 481, 484 (1st Cir. 2016) (noting that seven circuit courts conclude that decisions made under § 1155 are discretionary and not subject to judicial review). Still reviewable, however, are "predicate legal question[s] that amount to a nondiscretionary determination underlying the denial of relief." Abdelwahab, 578 F.3d at 821 (citing Ibrahimi v. Holder, 566 F.3d 758, 764 (8th Cir. 2009)).

**B. Discussion**

In this case, the USCIS determined that Petitioners' previously approved I-130 petition be revoked based on the determination that Fouda had previously entered into a marriage for the purpose of evading immigration laws. Respondents argue that because any ruling on the merits of Petitioners' claims would require the Court to review the discretionary decision of the Secretary to revoke a previously approved petition, Petitioners cannot avoid the consequences of the jurisdiction-stripping provisions in the Immigration and Nationality Act by framing attacks on a discretionary decision as collateral attacks on the agency decision-making process.  See e.g., Zeah v. Holder, 744 F.3d 577, 582 (8th Cir. 2014) ("caution[ing] that a petitioner may not create jurisdiction by cloaking an abuse of discretion argument in constitutional or legal garb").  Because this Court does not have jurisdiction over the Secretary's discretionary decision to revoke under § 1155, Respondents argue this action must be dismissed.

Petitioners argue there are two bases that support their position that the Court has jurisdiction to review the USCIS's determination to apply the marriage fraud bar in this case.  First, they argue this Court has jurisdiction to review that

determination because application of the marriage fraud bar is not within the

discretion of the Attorney General.  In support, Petitioners cite to <u>Ginters v.</u>

<u>Frazier</u>, 614 F.3d 822, 828-29 (8th Cir. 2010).  <u>Ginters</u> has no application here,

however, because it did not involve the revocation of a previously approved

petition pursuant to § 1155.  <u>See</u> <u>id.</u>  As noted by the court in <u>Bernardo</u>, the

statutory language used in §§ 1153, 1154 and 1155 demonstrates that Congress

intended judicial review of certain visa petition denials but not the revocation of

visa petition approvals in order to "structure and allocate the resources of our

immigration system.  As such, judicial review may be thought to be warranted in

some, but not all, situations.  Further, we note that petitioners have an

opportunity to respond to the NOIR, receive an explanation of why the petition's

approval was revoked, and are afforded an administrative appeal." <u>Bernardo</u>,

814 F.3d at 493-94.

Next, Petitioners argue that even if the USCIS's decision to revoke is itself

discretionary, courts still retain jurisdiction to review a predicate legal question

underlying the discretionary decision.  <u>Guled v. Mukasey</u>, 515 F.3d 872, 880 (8th

Cir. 2008).   Here, Petitioners argue the determination of whether a marriage was

entered into in good faith is a predicate legal question that is subject to judicial

review.  See Ibrahimi, 566 F.3d 758.  Accordingly, they argue this Court may

review whether the USCIS properly applied the law to the facts in determining

whether Fouda's marriage to Whitt was for purposes of evading immigration

laws.

Petitioners' reliance on Ibrahimi is misplaced because that case involved

an appeal from the USCIS's denial of his petition for a good faith marriage

waiver as provided in 8 U.S.C. § 1186a(c)(4) – not a revocation of a previously

approved petition pursuant to § 1155.  Id., 566 F.3d at 760.  In addition, that case

was before the Eighth Circuit on a petition for review pursuant to §1252(a)(2)(D),

which reserves jurisdiction for the appropriate court of appeals over

constitutional claims or questions of law.  Id., at 764.  Finally, Ibrahimi involved a

determination of statutory eligibility for the good-faith-marriage waiver set forth

in 8 U.S.C. § 1186a(c)(4)(B), and in that context, the Eighth Circuit found it had

jurisdiction to consider what the appropriate "legal standard is for the good-faith

marriage determination and to review the threshold determination of whether

the credited evidence meets the good-faith standard."  Id., 566 F.3d 763–64.

At issue here is whether the Court may review the underlying

determination regarding application of the marriage fraud bar, when that

determination is the basis for a revocation under § 1155.  The Eighth Circuit has not yet addressed this specific issue, but other courts of appeals have found that the court lacks subject matter jurisdiction to review a discretionary revocation, even if the revocation is based on a finding of marriage fraud.  See El-Khader v. Monica, 366 F.3d 562, 566, 568 (7th Cir. 2004) (finding "the fact that the INS is required to deny petitions to those who have committed marriage fraud for immigration purposes in no way limits the discretionary status of the Attorney General's subsequent revocation under § 1155 of a granted petition that, it turns out, should have never been made in the first instance. No statutory or regulatory mandate exists *requiring* the Attorney General to revoke visas in instances where he finds that marriage fraud had occurred. In fact, we know of no factual predicates for finding "good and sufficient cause" in the context of decisions made under § 1155."); Green v. Napolitano, 627 F.3d 1341, 1344-46, 1348 (10th Cir. 2010) (finding that decisions concluding that §1252(a)(2)(B)(ii) does not bar jurisdiction to review marriage-validity determinations for purposes of granting an immigrant petition under § 1154 do not apply to visa petition revocations pursuant to §1155).

This Court finds persuasive the decisions set forth in <u>Bernardo</u>, <u>El-Khader</u> and <u>Green</u> because those decisions focused on the statutory language of § 1155 – which clearly provides the Secretary of DHS the discretion to revoke an approved petition.

Accordingly, the Court finds it lacks subject matter jurisdiction to review the Secretary's decision to revoke the Petitioners' previously approved I-130 petition.

## III.   Failure to State a Claim

Even if the Court had jurisdiction to review Petitioners' claims, dismissal would be appropriate as Petitioners have failed to state a claim.

### A.   Violation of Section 201, 8 U.S.C. § 1151

In Count I, Petitioners assert that USCIS's practices, policies, conduct and failures to act deprived Petitioners of their right to have an immigrant visa petition approved.  In response to the motion to dismiss, Petitioners conceded that this claim is subsumed in their APA claim alleged in Count 2.  (Pet. Brief at 28, n.4.)

**B.      Violation of the Administrative Procedures Act**

Under the APA, a final agency action may be set aside if it was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law or in excess of statutory jurisdiction, authority or limitations.  5 U.S.C. § 706(a)(A) and (C).  Under the deferential standard set forth therein, courts are not allowed to "substitute [their] judgment for the agency's and in considering the entire record, must affirm if substantial evidence supports the decision."  Mercier v. United States Dep't of Labor, Admin. Review Bd., 850 F.3d 382, 388 (8th Cir. 2017) (citation omitted).

> "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's decision."  In reviewing the record, we consider evidence that both supports and detracts from the ALJ's decision, but will uphold the decision "if it is supported by substantial evidence on the record as a whole even if more than one conclusion could be drawn from the evidence." We give "great deference" to the ALJ's credibility determinations, and review an ALJ's evidentiary rulings under an abuse-of-discretion standard.

Id. (internal citations omitted).

Petitioners assert that they have identified several legal errors, abuses of discretion and other actions of the USCIS that were contrary to law when revoking their previously approved I-130 petition.

First, they assert that the USCIS impermissibly shifted the burden of proof to Fouda to disprove marriage fraud.  When an I-130 petition is filed, it is the petitioner's burden to prove that the current marriage for which the application is sought is a bona fide marriage, by showing they intended to establish a life together at the time of the marriage.  Matter of Pazandeh, 19 I & N Dec. 884, 887 (BIA 1989).  To deny a petition, Petitioners argue it is the government's burden to show by substantial and probative evidence that the marriage is a sham marriage and that the marriage fraud bar applies.  Matter of Tawfik, 20 I & N Dec. 166, 167-68 (BIA 1990).  "In making that adjudication, the district director may rely on any relevant evidence, including evidence having its origins in prior Service proceedings involving the beneficiary, or in court proceedings involving the prior marriage."  Id.

Next, in order to meet the "substantial and probative evidence" standard, Petitioners argue there must be affirmative evidence that creates more than a reasonable inference of fraud.  Id.  "[R]esolution of whether the visa petition revocation can be sustained will depend on a determination of whether there is, at present, sufficient evidence, inclusive of evidence relied upon in the determination of the first visa petition, to support the contention that the

15

beneficiary's previous marriage to a United States citizen was entered into for purposes of evading the immigration laws." Id. at 168-69.

In support, Petitioners cite to the July 1, 2015 decision of the USCIS, in which the agency stated that the burden of proof continues to rest with the petitioner to establish eligibility for the benefit sought. (Pet., Ex. 2 at 5.) Petitioners assert the burden of proof never rested with Petitioners to disprove the marriage fraud bar. The record does not support this argument, however.

In its July 1, 2015 decision, the USCIS noted that the law clearly provides "that a petition may not be approved where there is substantial and probative evidence of an attempt to evade immigration laws." (Pet., Ex. 2 at 4.) The decision then notes "where there is evidence in the record to indicate that the beneficiary has been an active participant in a marriage fraud, the burden shifts to the petitioner to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage." (Id.) The USCIS then noted that "[i]n visa revocation proceedings, the burden of proof continues to rest with the petitioner to establish eligibility for the benefit sought." (Id.)

Once the agency has identified substantial and probative evidence of marriage fraud, it is the petitioner's burden to present evidence to rebut such

evidence before a final decision is rendered. <u>Mendoza v. Secretary, DHS</u>, 851

F.3d 1348, 1355 (11th Cir. 2017).  <u>See also</u> <u>Singh v. BIA</u>, 2018 WL 1052600 at *2,

___ F. App'x __ (2nd Cir. Feb. 26, 2018) (finding that where the agency

established there was substantial and probative evidence of fraud, the burden

shifts to the petitioner to establish the beneficiary's prior marriage was bona

fide); <u>Omokoro v. Hamilton</u>, 688 F. App'x 263 (5th Cir. Apr. 27, 2017) (same).

In this case, the record shows that the agency identified substantial and

probative evidence of marriage fraud, sent a NOIR informing Petitioners of the

agency's findings and providing them the opportunity to respond and present

evidence to rebut the finding. (Pet., Ex. 2.)  The Court thus finds no merit to

Petitioners' claims that Respondents improperly shifted the burden of proof to

Petitioners.

Next, Petitioners argue the marriage fraud determination was not

supported by substantial and probative evidence, as that standard requires

affirmative evidence that creates more than a reasonable inference of marriage

fraud.  <u>Tawfik</u>, 20 I & N Dec. at 167-68.  "Inadequate evidence and negative

inferences do not meet this standard."  <u>In re Hassim</u>, 2006 WL 3922236, at * 1

(BIA Dec. 28, 2006).  One type of affirmative evidence of marriage fraud is

evidence that the U.S. citizen or the beneficiary admitted the fraud.  See e.g., Bourisquot v. Holder, 569 F. App'x 35, 36 (2d Cir. 2014); Ginters v. Dooley, No. Civ. 07-4681 (DWF/LIB), 2011 WL 2961499 at *1 (D. Minn. July 20, 2011).  On the other hand, Petitioners argue that indirect evidence and negative inferences are insufficient to support a finding of marriage fraud. See Simko v. BIA, 156 F. Supp.3d 300 (D. Conn. 2015); Boansi v. Johnson, 118 F. Supp.3d 875 (E.D.N.C. 2015); Delcore v. Holder, 13-8266, 2015 WL 1858363 (N.D. Ill. Apr. 20, 2015).

Substantial and probative evidence that a couple intends to establish a life together can take many forms, including proof that the beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms or bank accounts, and testimony or other evidence regarding courtship, wedding ceremony, shared residence and  experiences.  Liu v. Lynch, 149 F. Supp.3d 778, 788 (S.D. Tex. 2016).  The USCIS can also consider conduct after the marriage to the extent such evidence bears upon their subjective state of mind at the time they were married.  Id.  Affirmative evidence is one way to meet the substantial and probative evidence standard, but is not required.  See e.g., Liu, 149 F. Supp.3d at 788 (rejecting claim that the USCIS needed to identify direct evidence of an intent to evade immigration laws to qualify as substantial and

probative evidence of marriage fraud); <u>Ginters</u> No. 07-4681 (DWF/LIB), 2011 WL

2961499 at *6 (upholding the USCIS's determination and noting the court is not

permitted to re-weigh the evidence but is instead limited to determining whether

the agency's determination that the record contained substantial and probative

evidence was arbitrary and capricious).

The Court therefore finds that the USCIS identified substantial and

probative evidence in the record to show that Fouda married Whitt in an attempt

to evade immigration laws, including inconsistent interview answers and

multiple documents reflecting that Fouda and Whitt did not reside at the alleged

marital residence and held themselves out to be single except when they were

attempting to establish to the USICS that they had a bona fide marriage for

immigration purposes.

Finally, Petitioners assert that the USCIS failed to explain its decision to

reopen its investigation into Fouda's prior marriage and failed to identify what

additional evidence justified departure from Officer Swanson's determination

that the marriage fraud bar was inapplicable to him. Petitioners thus assert the

decision to reopen was arbitrary. <u>See</u> <u>Osakwe v. Mukasey</u>, 534 F.3d 977, 978 (8th

Cir. 2008) (due to inconsistent determinations by the USCIS that the marriage

fraud bar applied and the IJ during removal proceedings that the government
had failed to prove marriage fraud by clear and convincing evidence, matter
remanded to BIA resolve such inconsistencies).

Based on the statutory language of § 1155, the decision to revoke a
previously approved petition is not arbitrary and capricious where the record
supports the finding of marriage fraud with substantial and probative evidence.
Thus, where the revocation was based on the Director's realization that the
approval of the petition had been erroneous, such realization may constitute
"good and sufficient cause." Matter of Ho, 19 I & N Dec. 582, 590, Interim
Decision 3051 (BIA 1988).   In addition, before the petition was revoked,
Petitioners were given a NOIR and were provided the opportunity to rebut any
derogatory evidence, as required by the applicable regulations set forth in 8
C.F.R. § 205.2(a) and (b).  As a result, the Court finds their claim that the USCIS's
decision to take a second look at Fouda's prior marriage was either arbitrary or
capricious has no merit.

C.      Violation of Due Process

In Count 3, Petitioners claim that they have protected rights related to the

visa petition process and the USCIS's policies or interpretations of statutes and

regulations violated their rights to due process.

Congress has provided the Secretary of DHS authority to revoke the

approval of a petition "at any time, for what he deems to be good and sufficient

cause . . ." 8 U.S.C. § 1155.  Courts have found that a petitioner does not hold a

protected liberty or property interest in the continued validity of a visa petition,

given the fact that the continued validity of a visa petition is left to the discretion

of the Secretary.  See Musunuru v. Lynch, 831 F.3d 880, 891 (7th Cir. 2016) reh'g

denied (Dec. 9, 2016) (finding that alien "did not have a protected liberty or

property interest in the continued validity of [] visa petition because the decision

to revoke the petition was left to the discretion of USCIS"); Karpeeva v. U.S.

Dep't of Homeland Sec. Citizenship & Immigration Servs. ex rel. DHS, 432 F.

App'x 919, 925-26 (11th Cir. June 28, 2011) ("In the immigration context, we have

repeatedly concluded that where an alien seeks discretionary relief, there is no

such constitutionally protected liberty or property interest."); Foul v. Mukasey,

256 F. App'x 791 (6th Cir. Dec. 7, 2007) (finding that petitioner "had no protected

interest in obtaining discretionary relief from removal").

Nonetheless, the Court finds that Petitioners were provided sufficient

process to challenge the NOIR.  The relevant regulations provide notice and an

opportunity to be heard before a visa is revoked.  See 8 C.F.R. § 205.2(b).  In this

case, when the USCIS discovered reasons for revoking the previously approved

visa petition, it issued a NOIR and provided Petitioners an opportunity to offer

evidence in support of the petition and in opposition to the grounds alleged in

the revocation notice.  (Hove Aff. Ex 1 [Doc. 18-1].)  Moreover, Petitioners

exercised the opportunity to appeal to the BIA, and the BIA also provided a *de

novo* review of the record before ultimately concluding that the record contained

substantial and probative evidence that Fouda had engaged in marriage fraud.

(Pet., Ex. 3 at 2.)

Petitioners further claim they were denied procedural due process when

Respondents waited three and one-half years after approving the I-130 petition

to send a NOIR based on the marriage fraud bar concerning Fouda's first

marriage.  As a result, Petitioners have been deprived of the opportunity to be

heard at a meaningful time and in a meaningful manner – because it has affected

their ability to gather evidence that Fouda's prior marriage was not a sham.

Further, Petitioners argue that the USCIS's reliance on the initial NOID violated

their procedural due process rights, as those findings were vacated on appeal.

(Pet., Ex. 2 at 9.)

Petitioners failed to identify how the timing of the revocation prejudices

their ability to gather evidence.  In any event, Congress has given the USCIS the

discretion to revoke a petition at **any time**.  8 U.S.C. § 1155 (emphasis added).  In

addition, the record does not support Petitioners' arguments that the USCIS

improperly relied on the initial NOID, as those findings were vacated.  The

record shows the USCIS conducted an additional investigation and then issued a

NOIR, providing Petitioners with a complete explanation of its decision, and

giving Petitioners the opportunity to respond to all of the grounds included in

the NOIR.  (Pet. Exs. 2 and 3.)

**IT IS HEREBY ORDERED** that the Respondents' Motion to Dismiss [Doc.

No. 12] is **GRANTED** and this matter is dismissed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:    May 10, 2018                           s/ Michael J. Davis
                                                Michael J. Davis
                                                United States District Court